## LA TOURETTE *v.* FLETCHER.

JUDGMENT CREDITORS' SUITS ; POWER OF ORIGINAL COMPLAINANT TO DISCONTINUE.

Where the original complainant in a judgment creditors' suit discontinued the cause upon payment of his claim, and intervening creditors who had been allowed to become complainants, procured an order of the court setting aside the discontinuance and reinstating the cause, it was *held* on appeal by the defendant that under the circumstances the order vacating the discontinuance and reinstating the cause was a proper one.

No. 417. Submitted April 5, 1895. Decided May 13, 1895.

HEARING on an appeal by the defendant from an order setting aside the discontinuance of a creditors' suit, and reinstating the cause. *Affirmed.*

The COURT in its opinion stated the case as follows :

This is an appeal from an order setting aside the discontinuance of a cause. On March 7, 1894, Robert P. Fletcher filed a bill in the court below against John W. La Tourette, Celestia A. Smith and Thomas M. Fields, trustee, alleging the recovery of a judgment for $500, December 6, 1893, against Albert F. Kingsley and said John W. La Tourette, and the return of unsatisfied execution thereon. The object of the bill was to vacate, as fraudulent, a certain chattel mortgage made by La Tourette and wife to said Fields as trustee, to secure an alleged indebtedness of $4,800 to said Celestia A. Smith. The bill was signed by Henry

Wise Garnett, Esq., as solicitor for the complainant. March 12, 1894, one Marie Louise Apgar filed a petition of intervention, claiming a judgment against La Tourette for about $119, and joining in the prayers of the bill.

At the time his first judgment was obtained, said Fletcher had another suit pending against said La Tourette alone, in which he recovered judgment, March 2, 1894, for $1,190.05. Return of *nulla bona* was made to an execution thereon also. This demand had no connection with the first one, and the litigation was conducted by different attorneys. On May 31, 1894, said attorneys, B. S. Minor and R. Byrd Lewis, filed in said equity suit what they entitled a supplemental bill, in the name of said Fletcher, setting up the second judgment, adopting the allegations of the original bill, and praying to be allowed to combine the said judgments and to have the same remedies and relief prayed therein. This was done with the knowledge of Mr. Garnett and presumably without objection on his part. Sometime—presumably early in April—Thos. M. Fields, as attorney for La Tourette, made a proposition to Mr. Garnett, which was accepted for Fletcher, who was absent. La Tourette engaged to pay $250 in cash and to discharge the remainder of the $500 judgment in instalments of $75 each, beginning April 15. In consideration, Mr. Garnett agreed to let the bill stand without further prosecution, reserving the right, however, to proceed in case of failure to pay any one of the instalments. This agreement bears no date, and was not filed. Its real date of execution is not made to appear, but that must necessarily have been before April 15, when the first instalment became due thereunder. It was made therefore, about two months before the supplemental bill was filed, with which, or the claim therein set up, Mr. Garnett had no connection whatever.

Evidently, La Tourette did not pay the instalments punctually, though it does not appear what was the extent of his default. Mr. Garnett, contemplating a trip to Europe during the summer of 1894, made preparations to leave

certain matters of business to the attention of Mr. J. Miller Kenyon, who had charge of his office. Among these was the collection of La Tourette, concerning which he made the following memorandum of action in the event that payment should be made: " Enter judgment satisfied and give him an order in the equity cause stating the judgment satisfied and suit dismissed so far as we are concerned. Notify Minor, however, of our action beforehand, as he has entered the equity suit by petition, and I wish to give him an opportunity to protect himself." July 16, the money was paid to Mr. Kenyon, who gave to Mr. Fields, under title of the cause, the following order: " The clerk will please enter this cause settled and discontinued. (Signed) Henry Wise Garnett, per J. Miller Kenyon." This was presented to the clerk on the same day, and order of discontinuance. was at once entered.

On July 21, 1894, appellee entered a motion to vacate the order of discontinuance and for leave to proceed with the cause on his supplemental bill. A similar motion was made on behalf of Apgar. Affidavits of B. S. Minor, one of appellee's solicitors, were filed in support of the motion, and were not denied. From these it appears that after the last judgment of Fletcher was recovered, a supplemental bill was at once prepared to file in this cause, but was held up at the request of said Thomas M. Fields, who made repeated promises, on behalf of his client, to pay the judgment in partial payments. Among other things he promised to pay $1,000 as soon as he could arrange for a trust on the property, &c. Whilst these negotiations were pending, on to wit, May 25, said La Tourette, notwithstanding the restraining order that had been issued in this case, made a second deed of trust on all the said property to said Fields as trustee to secure a note for $1,000 to one Rapin E. Davis. If any money was obtained upon this trust, none of it was paid to appellee, and hearing of the transaction, his supplementel bill was filed. It also appears that Kenyon told Minor he would give La Tourette the order

in the cause if he paid in full, notwithstanding his previous defaults ; but that he did not inform him of the payment, and the discontinuance had been entered before he heard of the payment.

On the same day that the discontinuance was entered the following instruments were filed for record : A deed from La Tourette to Rapin E. Davis, conveying all of said property upon a consideration, as recited, of $6,000 ; a release by Fields, trustee, to said Davis of the two trusts hereinabove mentioned ; a trust deed by said Davis and wife to said Fields, trustee, to secure La Tourette in the payment of two notes for $2,000 each.   ·    .

The motions were not heard until after the return of Mr. Garnett, who testified that had he been here he would have · received the money and given Fields an order to the clerk to enter satisfaction of the judgment against La Tourette, and one in the equity cause saying that the judgment had been satisfied, and that the suit was to be dismissed, " so far as I was concerned." He also said that he would also have informed Mr. Minor of the receipt of the money and his intended action.

The motions were granted, the order of discontinuance vacated, and the cause ordered to proceed as if said order of discontinuance had never been entered. And from this order the appeal has been taken.

*Mr. Thomas M. Fields* for the appellant.

*Mr. R. Byrd Lewis* and *Mr. Benjamin S. Minor* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court :

The general right of a complainant to control his bill and to dismiss the same at his will, is not involved in this case. Even in the case of a creditor's bill, it has been generally held that it is subject to the control of the complainants therein, and may be discontinued at any time by

them, upon satisfaction of their demand, before a decretal order shall have been made in the proceeding. 1 Daniel Ch. 793, 794 ; Beach, Mod. Eq. Pr. sec. 455 ; *Innes* v· *Lansing*, 7 Paige Ch. 583 ; *Mattison* v. *Demarest*, 1 Robertson (N. Y). 717. In the case, however, of a general creditor's bill brought on behalf of all creditors who may thereafter come in and make themselves parties, or where other creditors have come in and joined in the prosecution of the bill by leave of the court, there is a strong tendency, and upon good reason, to deny the right of the original complainant to do more than discontinue the action as to his own claim, and the special relief to which he may be entitled thereon, especially where the rights of intervening claimants might be prejudiced thereby beyond the necessity merely of instituting an independent suit. *Thompson* v. *Fisler*, 33 N. J. Eq. 480.

All authorities concur in holding that the discontinuance, in order to be binding, must have been procured without fraud. This case is peculiar in that the complainant in the original and in the supplemental bill is the same person, though represented by different solicitors, and urging in each a separate and distinct demand. It is apparent that Mr. Garnett, the solicitor in the original bill, did not intend to prejudice the claim under the supplemental bill. He had undertaken to collect the judgment recovered by him, and nothing more. He was bound to receive the money when tendered in payment thereof, and made the stipulation at a time when no one else and no other claim were involved. His intention was to enter his own judgment as satisfied, and to give an order to the clerk that the suit was dismissed "so far as he was concerned." He intended to notify Mr. Minor, the solicitor in the supplemental bill, of the situation before any action was had, in order that he might protect the interest of his client as represented in the latter bill. Had the clerk been notified of the exact condition of the matter, or had Mr. Minor been informed of the contemplated action in time to notify the clerk, it is more

than probable that he would have declined to enter the order of discontinuance without an order of approval from the justice assigned to the special equity term of the court. Had the matter been referred to the court no doubt an order of dismissal may have been entered as to the part of the suit represented by Mr. Garnett, and the cause ordered to proceed as to the demands in the supplemental bill and as to the intervening bill of the other creditor, Marie Louise Apgar ; and such amendments may have been made to the bill as to conform it to the changed conditions.

It is evident also that the motive of the appellant was an unfair one. Whilst endeavoring to raise the money to pay off the small claim of the original bill, he was endeavoring also to prevent the filing of the supplemental bill by false promises of payments and arrangements for payment. During this time he executed another trust upon the property ; the proceeds of which, if any, were not used in payment as he had promised. The arrangement for the conveyance to Davis of all the property, and for his conveyance in trust to secure negotiable notes for $4,000, had all been completed and the papers prepared and executed ready to be filed for record, as they were, immediately after the discontinuance was entered. If the discontinuance were permitted to stand and the appellee forced, in consequence, to commence an entirely new proceeding, the execution, delivery and record of the conveyance aforesaid might be found to have prejudiced his rights materially ; at least, the conditions would be altered to his probable prejudice by the intervening changes in the title and in the necessary parties to the litigation.

Without intending to intimate, so far as the grantees in the intervening conveyances, and those who may claim under them, are concerned, that the same were devised for the purpose of defrauding the appellees or other creditors, if any, and therefore created no new rights, we are clearly of the opinion that there was no error in vacating the general order of discontinuance and reinstating the cause for

further proceedings as if that order had never been en-
tered.   Nor are we to be understood as anticipating any
defences that any of the parties may make, or the assertion
of any rights that they may claim under the conveyances
aforesaid based upon the probable effect thereon of the or-
der of discontinuance that has been vacated.   These may
be matters of future consideration ; they are not now in-
vòlved.

   *The order appealed from must be affirmed, with costs to the
appellees.   It is so ordered.*