Latimer *v.* Eddy.

[KINGS GENERAL TERM, February 12, 1866. *Scrugham, Lott* and *J. F. Barnard,* Justices.]

JAMES M. LATIMER, as trustee of the Nevada Water Company, *vs.* ALDEN H. EDDY, NEWTON DEUEL, AUGUSTUS Z. HUGGINS and JOSEPH J. VAN BUREN, co-trustees, and said The Nevada Water Company.

In a suit brought by a trustee of a corporation, under the statute conferring equity jurisdiction over corporations and their managers, trustees and officers in certain cases, (2 *R. S.* 462, 463, §§ 33, 35,) against his co-trustees, to compel them to account for and pay to the company its money, which he alleges they have lost and wasted, and converted to their own use, an injunction will not be granted restraining the defendants from acting as trustees, and from managing, controlling or interfering with the affairs, property, assets, &c. of the corporation, from receiving any of such property, &c. and from consenting to be voted for, or to be elected, as trustees, or from acting as trustees on such re-election; where the action is not brought to procure a dissolution of the corporation or distribution of its assets, and the plaintiff does not ask for a receiver, and the complaint contemplates the continuance of the corporation and of its legitimate business and operations. G. G. BARNARD, J. dissented.

Though the court may possess the power to restore and continue a preliminary injunction granted in such a case, which restrains the defendants from acting as trustees, it will not be exercised unless a receiver can be appointed; a receiver being necessary to preserve the property of the corporation and to protect the interests of the stockholders, and of the creditors of the corporation.

There is no express provision of the statute, giving to the court the power to suspend all the business and operations of a corporation for an indefinite period, by the appointment of a receiver. And the general principle is that a court of equity has no visitorial power over corporations, except such as may be expressly conferred on it by statute.

THIS was an action brought by the plaintiff, as trustee, against his co-trustees, to compel them to account for and pay to the company its money, which he alleges they had lost and wasted and converted to their own use, in pursuance of a combination among themselves and with others to defraud the company of all its income.

The complaint alleges that, on the 12th day of November, 1858, The Nevada Water Company was incorporated, under the mining laws of this state, to carry on the business of gold mining in the state of California, particularly that branch of it which consists in the sale of water to miners to wash gold. The amount of capital stock, $500,000, divided into five thousand shares of $100 each; the number of trustees, five; and the principal place of business located in the city of New York. That before the 3d day of February, 1859, the company was organized and doing business, with its capital paid up, by the conveyance of two canals and other property in complete order, situated in Nevada county, California, which property had actually cost, in construction, over four hundred thousand dollars. This property was originally owned by William M. Eddy, Alden H. Eddy and Jeremiah Pollard, who caused the property to be conveyed to the company, and received all its capital stock in payment therefor. That, subsequently, Pollard and the Eddys disposed of about one thousand shares of their stock to other parties. That by-laws were made, and the office of superintendent created, the duties of which were to take charge of the property of the company in California, and transmit, monthly, to its treasurer in New York, all the net income from its property. That, by means of their large majority of stock, Pollard and the Eddys have retained and exercised supreme control over the affairs of the company, by electing a majority of trustees of such persons as would act as directed by them. That, on the organization, Pollard was appointed superintendent of the property of the company in California, where he then was and in charge of the

same. That between the 3d of February, 1859, and December, 1860, the defendants Allen H. Eddy, Huggins and Deuel, together with William M. Eddy, Pollard and others, formed a combination to defraud the company of all its income. That the net income of the company for the year 1859 was over ninety-two thousand dollars ; but that the superintendent Pollard did not transmit any part thereof to New York, but, in pursuance of the combination, converted it to the use of himself and the Eddys. That, at the time of the organization of the company, Pollard and the Eddys were in debt in California to an amount exceeding $50,000 ; that Pollard took up these claims against himself and the Eddys, by giving the notes of the company therefor, which notes he paid out of the income of the company for the year 1860. That Pollard carried on mining for the private benefit of himself and the Eddys. That, in 1860, Pollard purchased a large interest in three sets of mining claims for the private benefit of himself and the Eddys, and paid therefor more than $15,000 out of the company's money. That Pollard worked these claims for the private benefit of himself and the Eddys with the company's funds, and used the water of the company for that purpose without paying for it. That Pollard constructed a tunnel for the benefit of these claims, at a cost of twenty-seven thousand dollars, which he paid for with the company's funds. That, between the years 1859 and 1861, Pollard remitted more than $25,000 of the company's money to William M. Eddy, on private account. That during the same time Pollard paid large sums to Alden H. Eddy, on private account. That Alden H. Eddy purchased mining claims in California to the amount of $20,000, and used the funds and credit of the company to make the purchase. That Pollard sent William M. Eddy, in the city of New York, for eight months of the year 1860, $2000 per month out of the funds of the company, and William M. Eddy converted the same to his private use. That, on the 2d of October, 1860, William M. Eddy was called on by the

board of trustees to account for the company's funds sent him by Pollard, and he made and filed a written report, in which, among other things, he stated: "That no moneys had been received by him directly as secretary and treasurer of the Nevada Water Company; that, by request of the principal stockholders, the superintendent had retained in California, and applied on personal liabilities of said stockholders, so much of the net profits of said company as had come into his hands." That said statement was entered in full on the minutes of the board of trustees. That, by reason of these fraudulent appropriations of its funds, the company had no funds to pay office rent and ordinary expenses in New York, and was in debt for the same over $3000. That up to that time the net earnings of the company had been over one hundred and sixty-eight thousand dollars ($168,000,) of which it had only received eight hundred and forty dollars, ($840.) Huggins, one of the defendants, makes this statement as secretary. That Gardiner, one of the trustees, in September, 1861, made a motion to remove Pollard as superintendent, and for cause specified in detail all the acts of fraud before mentioned, and had the same entered in full on the minutes, but the trustees refused to remove him. That on November 5, 1861, the defendants were elected trustees of the company by the vote of the stock of Pollard and the Eddys. That immediately thereafter, the defendants reappointed Pollard superintendent, and that it was one of the conditions of their re-election that they should so reappoint and continue Pollard superintendent. That each of the defendants had full knowledge of all the frauds of Pollard and the Eddys. That the defendants had refused to take proceedings to recover the property and moneys of the company in which, as stockholder, the plaintiff was interested, and, as trustee, bound to protect and recover for said company. That the defendants had prevented and did prevent dividends, and had made valueless the stock of the company. That, but for the conspiracy and frauds of the defendants,

Latimer *v.* Eddy.

the market value of the stock of said company would have been above par, the net income of the company from its property being over twelve per cent per annum on its stock. That, by reason of the fraudulent acts of the defendants, the company is now without money or funds, and unable to pay its debts. That the defendants Eddy, Huggins, Deuel and Van Buren own and control a majority of the stock of said company, and are enabled to re-elect themselves as trustees ; and as trustees, when elected, to continue and to carry out said combination and conspiracy, and to continue and repeat, and suffer to be continued and repeated, and will authorize to be done, the aforesaid frauds and fraudulent acts, and that unless restrained and enjoined by an order of injunction, said defendants will continue and carry out said combination and conspiracy, and will continue and repeat, and suffer to be continued and repeated, said frauds and fraudulent acts, said omissions and neglects ; will allow said Pollard and Eddys to retain the moneys, so fraudulently appropriated and paid in their hands ; will cause themselves, or those of like purpose, to be re-elected trustees ; and will misapply the property of said company, or the proceeds of said property that may hereafter come into their hands ; and otherwise manage its affairs and business in such a way as to deprive the stockholders in said company and this plaintiff of their and his rights in said company, his and their stock of all value, and said company of all benefits from its said property, and break up and cause the dissolution of said company and the loss of its property.

A preliminary injunction was granted, which was subsequently dissolved by the court, at special term. From that decision, the plaintiffs appealed to the general term.

*A. J. Vanderpoel* and *Chas. P. Shaw*, for the appellants.

*J. E. Burrill*, for the respondents.

SUTHERLAND, J.   This action was brought under sections 33 and 35 of the statute conferring equity jurisdiction over corporations and their managers, trustees and officers in certain cases.   (1 R. S. 462, 463, 1st ed.)   The principal relief asked for by the complaint is, the removal of the individual defendants, trustees of the corporation, from their office of trustee.

I see no reason to doubt that the action was properly brought in the name of the plaintiff as a trustee.   (See § 35 above referred to.)   The preliminary injunction which was granted in this case, and which the plaintiff moved to have continued, restrained the individual defendants from acting as trusteees, and from managing, controlling, or interfering with the affairs, property, assets, &c. of the corporation, and from receiving any of such property, &c. and from consenting to be voted for, or to be re-elected trustees, and from acting as trustees on such re-election.

It is evident that the continuance of the injunction must absolutely have stopped all further legitimate operations and business of the corporation for an indefinite period; for the individual defendants are a majority of the trustees, and, according to the by-laws, a majority of the trustees must meet to act, and the stockholders can act only through the trustees or directors.

It should be particularly noted that the complaint in this action does not ask for a receiver; that the action is not brought to procure a dissolution of the corporation, or distribution of its assets.   The complaint contemplates the continuance of the corporation, and of its legitimate business and operations under the administration of the new trusteess.

Perhaps the power of the court to restore and continue the preliminary injunction which was granted in this case can not be questioned, though such injunction absolutely restrained the individual defendants from acting as trustees, and thus must be presumed to have stopped all the business and operations of the corporation; for by the third subdivision of sec-

tion 33, above referred to, power is expressly given to suspend any trustee or officer, from executing his office, whenever it shall appear that he has abused his trust; but it is clear that such injunction should not be restored and continued unless a receiver can be appointed. A receiver would be necessary to preserve the property of the corporation, and to protect the interest of the stockholders, and of the creditors of the corporation, if it has any. The appointment of such receiver must absolutely suspend all legitimate business and operations of the corporation, for an indefinite period, unless the court can and does give such receiver power to carry on the business and operations of the corporation in California.

I even doubt the power of the court to appoint a receiver in this case without such power.

There is, certainly, no express provision of the statute, giving the court power thus to suspend all the business and operations of a corporation in such a case, and the general principle is, that a court of equity has no visitorial power over corporations, except such as may be expressly conferred on it by statute.

I think the order appealed from should be affirmed, with $10 costs.

LEONARD, J. concurred.

GEO. G. BARNARD, J. (dissenting.) The complaint in this case is filed, among other things, to obtain the removal of the trustees of the Nevada Water Company, other than the plaintiff, on the ground that they are all concerned in diverting the profits and income of the company from the company, in pursuance of a combination, to their own individual benefit. An injunction and a receiver are prayed for.

After a careful investigation of the appeal papers, I am of opinion that the charge of diversion is made out. The whole property of the company is under the control of the trustees who are thus diverting its income from its legitimate chan-

nel. This brings the case within the exception contained in *Galwey* v. *U. S. Steam Sugar Refining Company*, (36 *Barb.* 256.)

It is a proper case, within the numerous authorities cited by the appellant, for the granting an injunction and appointing a receiver.

The trustees and officers of the company must convey all the property of the company to the receiver, under the direction of a referee to be appointed by the court.

I think the order appealed from should be reversed.

Order affirmed.

[NEW YORK GENERAL TERM, June 18, 1864. *Sutherland, Leonard* and *Geo. G. Barnard*, Justices.]